THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing: October 17, 2013          Mailed: January 31, 2014

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Fiat Group Marketing &
Corporate Communications S.p.A.

_____

Serial No. 79099154

_____

Leo M. Loughlin of Rothwell Figg Ernst & Manbeck PC for
Fiat Group Marketing & Corporate Communications S.p.A.

Janice McMorrow, Trademark Examining Attorney, Law Office
115 (John Lincoski, Managing Attorney).[1]

_____

Before Wellington, Kuczma, and Greenbaum, Administrative
Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

Fiat Group Marketing & Corporate Communications S.p.A.

(applicant) has filed an application for extension of

protection of an international registration under Section

66(a) of the Trademark Act, 15 U.S.C. § 1141f(a) (Madrid

Protocol), seeking registration of **FIAT 500** (in standard

character form) on the Principal Register for various goods

---

[1] The application was re-assigned to the identified examining
attorney after appeal briefs were filed.  Ms. McMorrow appeared
on behalf of the Office at the oral hearing.

and services,[2] including, as originally identified, the

following in International Class 35:

> Advertising services; business management; business administration; office functions.

In this appeal, we are concerned with the amended

identification the applicant seeks to substitute for Class

35, which reads as follows:

> Advertising services; retail store and on-line retail store services featuring a wide variety of consumer goods of others.

The examining attorney has refused registration for

failure of applicant to comply with a requirement pursuant

to 37 C.F.R. § 2.71(a) for an acceptable recitation of the

services in International Class 35, because the identified

retail store and on-line retail store services are not

within the scope of the recitation that was set forth in

the application at the time of filing.

It is clear that, throughout prosecution, the refusal

has been limited to the "retail store and on-line retail

store services featuring a wide variety of consumer goods

of others" portion of the application's Class 35 recitation

---

[2] Application Serial No. 79099154, based on International Registration No. 1082074, has been accorded an effective filing date of May 3, 2011, and a priority date of April 26, 2011, pursuant to Section 67 of the Act. See 15 U.S.C. §§ 1141f(b) (filing date) and 1141g (claim of priority).

of services; indeed, the examining attorney has expressly accepted the "advertising services" portion.[3]

Section 1904.03(d) of the TMEP (October 2013) provides:

> If a notification of refusal in a §66(a) application does not pertain to all the goods/services, the mark may be protected for the remaining goods/services, even if the holder does not respond to the notification of refusal. Sections 68(c) and 69(a) of the Trademark Act, 15 U.S.C. §§1141h(c) and 1141i(a), provide that an application under §66(a) of the Trademark Act is automatically protected with respect to any goods or services for which the USPTO has not timely notified the IB of a refusal by either *ex officio* examination or opposition.

In view thereof, our consideration of the refusal to register is expressly limited to the "retail store and on-line retail store services featuring a wide variety of consumer goods of others."  Therefore, regardless of our determination herein, the application will move forward with respect to the "advertising services" in Class 35, as well as the identified goods in the other classes.

---

[3] In the Office action issued on March 14, 2012, making the refusal final, the examining attorney noted the retail store and on-line retail store services and stated "[s]pecifically, this wording is beyond the scope of the identification…."  The examining attorney also continued to suggest "advertising services" as an acceptable recitation.  Moreover, in the August 23, 2012 Office action denying applicant's request for reconsideration, the examining attorney acknowledged and accepted applicant's amendments as to the goods in the other classes and articulated the refusal with respect to Class 35 solely based on the "retail store and on-line retail stores services."

*Background*

In the first Office action, the examining attorney informed applicant that several of the identifications of goods and services, including those in Class 35, required "clarification in several respects," and informed applicant that while it may clarify or limit the goods and services, Trademark Rule 2.71(a) expressly prohibits any broadening of the scope of the identifications. In response, applicant amended the Class 35 services to its current form, namely, "advertising services; retail store and on-line retail store services featuring a wide variety of consumer goods of others."

In a second Office action, the examining attorney continued the refusal and made final the requirement for a proper identification of goods and services. With respect to Class 35, the examining attorney stated that applicant's proposed wording is unacceptable because the retail store services portion is outside the scope of the application's initial recitation of services ("this wording is beyond the scope of the identification because the initial application did not list any store services of any kind, nor any services which would encompass them...").[4]

---

[4] Office action dated March 14, 2012.

After issuance of the final refusal, applicant filed a request for reconsideration which was denied by the examining attorney. Applicant appealed; both applicant and the examining attorney have filed briefs and presented oral arguments.

*Issue on Appeal*

The issue on appeal involves whether amending the identification to retail store services from "advertising services; business management; business administration; office functions" constitutes broadening, in violation of Trademark Rule 2.71(a), 37 C.F.R. § 2.71(a). The rule permits an applicant to "amend the application to clarify or limit, but not to broaden, the identification of goods and/or services." The rule is necessary to provide the public with notice as to the scope of goods and/or services for which applicant is seeking registration and to enable the USPTO to reach informed judgments concerning likelihood of confusion. Here, there is no dispute that the recitation of services in the application, as originally filed, *i.e.*, "advertising; business management; business administration; office functions," constitutes the

International Class 35 heading in its entirety.[5]  There is likewise no dispute that the objectionable, proposed amended wording, *i.e.*, "retail store and on-line retail store services featuring a wide variety of consumer goods of others," is a sufficiently definite service that would be properly classified in Class 35.  Thus, the essential question or issue on appeal is whether the <u>language</u> of the Class 35 heading encompasses retail store services such that applicant's amendment is in compliance with Rule 2.71(a).  The question is not, contrary to applicant's argument discussed below, whether the scope of Class 35, as shown by the listing of services that fall within it, encompasses the services in applicant's proposed amendment.

*Argument*

As noted by the examining attorney, the *Trademark Manual of Examining Procedure* (TMEP) explicitly addresses

---

[5] International trademark classification, and the headings of the international classes, are established by the Committee of Experts of the Nice Union and set forth in the *International Classification of Goods and Services for the Purposes of the Registration of Marks* (10th ed. 2011), published by the World Intellectual Property Organization ("WIPO").  In addition, alphabetical listings of acceptable goods or services within each class are published by WIPO.  The USPTO also publishes a similar list, "U.S. Acceptable Identification of Goods and Services Manual (ID Manual)";  the USPTO list is consistent with and expands on the WIPO list, and may be accessed at the following website address:  http://tess2.uspto.gov/netahtml/tidm.html

the scenario presented here, where an identification

recites the wording of a class heading.  The TMEP provides:

> …for the purpose of determining the scope of an
> identification, the examining attorney should consider
> the ordinary meaning of the wording apart from the
> class number designation.
> **… In many cases, the identification is merely a**
> **repetition of the entire general class heading for a**
> **given class.  In this situation, the USPTO will look**
> **to the ordinary meaning of the words for the purposes**
> **of determining the scope of the identification.  The**
> **USPTO will not permit the applicant to amend to**
> **include any item that falls in the class, unless the**
> **item falls within the ordinary meaning of the words in**
> **the heading, or to amend to items in other classes**.
> As noted in TMEP §1402.01(b), class headings are
> generally unacceptable to identify goods/services in
> United States applications, even if the class heading
> is used as the identification in the foreign
> registration.

TMEP § 1402.07(a) (The "Ordinary-Meaning" Test)(Emphasis in
**bold** added).

Applicant asserts that "the amended service[s] should

be considered within the scope of protection of the

original application, since the full heading for Class 35

protects 'retail store and store services.'"  Brief, p. 2.

In support, applicant cites to the following language from

TMEP § 1402.02 concerning the filing date requirement that

an application identify recognizable goods/services:

> The USPTO will not deny a filing date if the applicant
> uses the language of an international class heading or
> indicates that the mark is used on all goods or
> services in a certain class.  However, the USPTO
> strongly discourages the use of the language of the
> international class headings or statements that the
> mark is used on all goods or services in a class to

7

> identify the goods or services for which registration
> of the mark is sought, and will require amendment of
> any such identification.
> ...
> Note also that an applicant is required to submit a
> verified statement that the applicant is either using
> the mark in commerce or has a bona fide intention to
> use the mark in commerce on or in connection with all
> the goods and/or services set forth in the
> identification. It is unlikely that any applicant is
> using or intends to use a mark on all goods or
> services within a certain class.

According to applicant, the above TMEP language "makes it clear that the PTO considers a class heading to encompass all of the goods or services in a particular class." Brief, p. 3. Applicant also compares its use of the class heading to others' use of wording such as "all other items in Class []" in identifications and cites to a non-precedential Board decision where it was held that the latter phrase does encompass all goods or services within the specified class.[6] With respect to its own proposed amendment, applicant contends that it is not improperly broadening the scope of the original services because "retail services are definitely included under the umbrella of business management services" inasmuch as "[o]perating a

---

[6] *See In re Mark D. Baruffi,* (not precedential) App. No. 78164161 2005 WL 1285669 (TTAB, May 6, 2005). Non-precedential decisions are not binding on the Board, but may be cited to and considered for whatever persuasive value they may hold. *In re the Procter & Gamble Company*, 105 USPQ2d 1119, 1120-21 (TTAB 2012); *In re Luxuria s.r.o.*, 100 USPQ2d 1146, 1151 n.7 (TTAB 2011). *See also*, TBMP §§ 101.03, 801.03, and 1203.02(f) (2013).

retail store and offering such services is [sic] a business

services and involve the management of the business." *Id.*

at p. 4.

Finally, applicant references in its appeal brief a

third-party application that was allowed by the USPTO to

mature into a registration.[7] The examining attorney's

objection to applicant's introduction of this registration,

and reliance thereon, is sustained inasmuch as a copy of

the registration was not submitted prior to appeal.

Trademark Rule 2.142(d). Accordingly, we have given no

further consideration to this registration. Applicant also

referenced in its reply brief an additional registration

that applicant itself acquired under what it claims are

identical circumstances.[8] Again, because this registration

was not timely submitted, it has not been given

consideration. *Id.* In any event, prior decisions by

examining attorneys involving the scope of headings and any

---

[7] Applicant asserts that Registration No. 3505278 issued "for retail services in International Class 35 where the application was originally based on Section 1(b), but was amended to Section 44 based on a [European Community Trademark] listing the same [International] Class 35 headings as the instant application." Brief, p. 5.

[8] Applicant asserts that it is the owner of Registration No. 4162910 for the mark FIAT for goods and services that include "retail store services" in International Class 35 and that it obtained this registration under Section 66(a) based on a foreign registration that merely lists the International Class 35 heading as the identified services in said class.

permissible amendments do not dictate a particular result for this appeal. *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); *see also In re Rodale Inc.*, 80 USPQ2d 1696, 1700 (TTAB 2006) ("Although consistency in examination is a goal of the Office, the decisions of previous Trademark Examining Attorneys are not binding on us, and we must decide each case based on the evidence presented in the record before us.").

The examining attorney, on the other hand, argues that the adoption and use of an international class heading in an identification should not be construed as automatically encompassing any and all goods or services falling within that given class; and, in this particular case, the wording of the International Class 35 heading does not include "retail store services."

In addition, the examining attorney rejects applicant's assertion that the specific term "business management" may be understood as covering retail store services. In support, she submitted the following definition with her appeal brief:

> Business Management (BM) – Process and result of applying *Management* (qv) and *Management Science* (qv) concepts and techniques to the system, function or office of planning, organizing, staffing, developing, directing, coordinating, evaluating and controlling all available or projected material, human, and environmental resources of a business organization or

> system to achieve its goals, objectives and mission,
> successfully.

Dictionary of Professional Management by I.S. Banki
(Systems Research, 1997).[9]

Based on this definition and in accordance with the

"ordinary meaning" test provision of the TMEP, the

examining attorney concludes that "'business management'

does not simply refer to any activity a 'business'

undertakes, e.g., retail store services, it refers to

applying management techniques within a business to achieve

success." Brief, p. 9. And while applicant has argued

that it manages its own business and thus performs

"business management" services, the examining attorney

counters that this is not a service rendered in commerce

for others but is merely a service that is incidental to

running any business. Rather, the examining attorney

---

[9] The examining attorney requested that the Board take judicial
notice of this definition. In its reply brief, applicant
objected because the definition was not submitted prior to the
appeal. Because the Board may take judicial notice of dictionary
definitions, timeliness is not an issue. Furthermore, in this
case, the examining attorney submitted with the brief copies of
the definition, cover and publication information pages. In view
thereof, we take judicial notice of the provided definition. *In
re Thomas White Int'l Ltd*, 106 USPQ2d 1158, 1160 n.1 (TTAB 2013)
(judicial notice taken from dictionary existing in print format);
see also, *In re Analog Devices Inc.*, 6 USPQ2d 1808, 1810 n.2
(TTAB 1988) (judicial notice of technical trade dictionaries such
as IEEE Standard dictionary of Electric and Electronics Terms)
*aff'd,* 871 F.2d 1097, 10 USPQ2d 1879 (Fed. Cir. 1989); *University
of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc.*, 213
USPQ 594, 596 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505
(Fed. Cir. 1983).

asserts that "applicant's retail store services are separable, core activities which entail offering third party products to consumers for purchase and do not entail providing business techniques as an end product to those consumers." *Id.*

*Finding*

We agree with the examining attorney that the proposed amendment improperly broadens the identification of services, in violation of Rule 2.71(a). The term "business management," as well as the other terms in the International Class 35 heading, cannot be construed as encompassing retail store services. An applicant must identify the goods and services specifically to provide public notice and to enable the USPTO to classify the goods and services properly and to reach informed judgments concerning likelihood of confusion under 15 U.S.C. §1052(d). As our reviewing court has held, the USPTO has discretion to require the degree of particularity deemed necessary to clearly identify the goods and/or services covered by the mark. *In re Omega SA*, 494 F.3d 1362, 83 USPQ2d 1541 (Fed. Cir. 2007). The TMEP contains clear guidance about the particularity required, including that "common names" and "generally understood" terminology should be used, "not a class heading." TMEP 1402.01(a).

12

It is clear that the examining attorney has properly followed Office policy, specifically the policy set forth in the TMEP's "Ordinary-Meaning Test" section (set forth above), in considering the scope of the term "business management," as well as the other terms in applicant's original Class 35 recitation of services. We see no error in the examining attorney's reliance on this section nor do we see any reason to deviate from the Office's clear and publically-stated policy. Consideration of the "ordinary meaning" of wording in any identification of goods or services when attempting to define the scope of an identification is pragmatic and encourages consistent interpretation of various terms.

"Business management" is a defined term, with the meaning set forth above. No other defined meanings have been made of record nor is there evidence showing that "business management" possesses any additional meaning or may be construed any differently in scope. Applicant's contention that "business management" is an umbrella term that incorporates "[o]perating a retail store" because the latter involves "the management of [a] business" is not supported by the record.

With the above in mind, we find that business management services are significantly different from and

13

cannot be construed as including retail store services. Given the definition of "business management" and the requirement that for a mark to be registrable for services, the services must be performed for the benefit of others, such services would necessarily involve one entity employing a variety of techniques or skills in order to assist another "business organization or system" and help that business "achieve its goals, objectives and mission, successfully." In other words, this entails a business-to-business service with one company helping another company function better in its business. Retail store services, on the other hand, involve entities bringing together different goods for retail purchase by consumers; this is a service offered to the purchasers of the goods.

We are furthermore not persuaded by applicant's attempts to equate or liken the mere recitation of an international class heading with other identifications that include specific language asserting use of a mark on "all of" the goods or services within a particular international class. The plain meaning of the wording "all of" the goods or services in an international class can only be understood as meaning that applicant is seeking protection of its mark for all goods or services in that particular class, as defined in WIPO's *International Classification*

manual (see footnote 5).  The unpublished *In re Baruffi* decision is readily distinguishable on this basis; applicant in that proceeding stated in his initial application that he intended to use his mark on certain clothing items as well as "all other items in Class 25."

Class headings, on the other hand, are by their nature comprised of intentionally broad terms, but do not necessarily cover all goods or services within that class. TMEP § 1402.07(a) clearly explains this by noting that where an identification is the mere repetition of a class heading, "[t]he USPTO will not permit the applicant to amend to include any item that falls in the class, unless the item falls within the ordinary meaning of the words in the heading."  Applicant relies on TMEP § 1402.02 to support its contention that use of a class heading covers all of the goods or services in the class.  Such reliance is misplaced.  TMEP § 1402.02 only equates use of an international class heading with language such as "all of the goods [or services]" in a particular class, for the purpose of explaining that applications with such improper identifications will still be accorded a filing date. Furthermore, the provision in TMEP § 1402.02 advising that it is "unlikely that any applicant is using or intends to use a mark on all goods or services within a certain class"

15

was clearly made only in the context of requiring an applicant to submit a verified statement that it is either using the mark in commerce or has a *bona fide* intention to use the mark in commerce with all of the identified goods or services.

To be clear, while class headings are allowed in international registrations, and the USPTO will accord a filing date to a USPTO application seeking extension of protection to an international registration that uses a class heading as an identification of goods or services, use of the <u>words</u> comprising a class heading as an identification in an application filed with the USPTO is not deemed to include all the goods or services in the established scope of that class.

Finally, we address an issue raised at oral hearing involving the existence of a policy (sometimes referred to as "class heading covers all") adopted by certain countries party to the Madrid Agreement and/or Protocol. This policy involves interpreting the scope of an international class heading in an application or registration as encompassing the entire alphabetical list of acceptable goods or services for that class. It is therefore possible that an applicant requesting extension of protection to the United States based on an International Registration employing

international class headings may incorrectly assume that it can later amend its application to identify any one or more of the listed goods or services within the international class. While we appreciate how such a mistaken notion may arise, no provision in U.S. law or any obligation by treaty obliges the USPTO to deviate from or make an exception to its longstanding practice governing the scope and interpretation of identifications and in deciding what amendments are permissible. Put simply, in the case at hand, the fact that applicant's use of the International Class 35 heading may be understood in other countries to include retail store services has no influence on our decision.[10]

In sum, we conclude that the application's current recitation of services in International Class 35 is

---

[10] We further note that the trend is to move away from this "class heading covers all" construction of identifications with respect to Community Trademarks (CTM's) in the European Union. In 2012, the Court of Justice of the European Union (ECJ) issued a decision involving the use of international class headings. See Case C-307/10[2012] *Chartered Institute of Patent Attorneys v. Registrar of Trade Marks* (commonly referred to as "*IP Translator*"). Subsequent to and in accordance with the *IP Translator* decision, the European Union's Office of Harmonization in the Internal Market (OHIM) set forth a new CTM application policy requiring an applicant who uses class headings to affirmatively indicate that it is seeking protection for all listed goods or services in the class. Our observation of the *IP Translator* decision and OHIM policy is solely for purposes of noting a trend in other countries; the decision and OHIM policy do not factor into our decision in this particular matter.

unacceptable insofar as it includes "retail store services and on-line retail store services featuring a wide variety of consumer goods of others," because that language exceeds the scope of the services originally recited in the application in violation of Rule 2.71(a).

**Decision**:  The refusal to accept registration of applicant's mark for "retail store services and on-line retail store services featuring a wide variety of consumer goods of others" in International Class 35 is affirmed. The application shall proceed to publication for "advertising services" in International Class 35, as well as the identified goods in the other international classes.